***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Submitted March 13, affirmed April 26, petition for review denied
July 20, 2023 (371 Or 308)

In the Matter of B. H.-M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

P. M.,
*Appellant.*

Linn County Circuit Court
19JU08932; A178943

Michael B. Wynhausen, Judge.

Aron Perez-Selsky and Michael J. Wallace filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Father appeals the juvenile court judgment asserting jurisdiction over his child, H, pursuant to ORS 419B.100 (1)(c).[1] He challenges three of the four bases for the court's decision. In one assignment of error, father contends that the court's judgment was based on an erroneous finding that H's "condition or circumstances" presented a reasonable likelihood of harm to H. In particular, father argues that the evidence was insufficient to support that finding. Father asks us to review this case *de novo*, as we are authorized to under ORS 19.415(3)(b). The Department of Human Services (DHS) argues that father's case does not warrant *de novo* review and that the evidence in the record supports the court's decision. We agree with DHS and, upon reviewing father's claim for errors of law, we find no error by the juvenile court and affirm its judgment.[2]

We provide some background and recount those facts necessary to explain our ruling. Father was awarded custody of H when H was 10 months old. When H was nine years old, he was removed from father's home—where he lived with father, stepmother, three half-siblings, and stepmother's child—and was placed into foster care, based on suspicion that he had been abused under father's care. Prior to his removal, the police had reported other incidents involving H and his family, including an occasion when H had run away from home. Following his removal, H was diagnosed with multiple psychological disorders, including post-traumatic stress disorder (PTSD) and attention deficit hyperactivity disorder (ADHD). DHS filed a petition for jurisdiction that included the following allegations.

"3D.   * * * [F]ather has physically abused [H].

"3E.   * * * [F]ather is unable to meet [H's] special emotional, behavioral, or mental health needs * * *.

---

[1] ORS 419B.100(1)(c) provides that, except for certain specific circumstances not applicable to this case, "the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and * * * [w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]"

[2] Mother admitted to the jurisdictional allegations against her and is not a party to this appeal.

"3F.   [H] has been subjected to a pattern of abuse by
*** father and/or members of *** father's household.

"3G.   [Father] subjected [H] to excessive discipline
resulting in physical and/or emotional harm to [H]."

During the related proceedings, several witnesses
testified, including H, father, stepmother, H's therapist,
the social worker involved in the case, forensic interviewer
Esther Friedman who interviewed H, and three clinical psy-
chologists—Robert Basham, who evaluated H after he was
removed from father's care; Wendy Bourg, who reviewed H's
forensic interview; and Landon Poppleton, who evaluated
father. Some of those witnesses testified that H disclosed
that he had been subjected to punishments under father's
care, including being locked in his room without food, about
which H also testified at trial. Father denied all abuse alle-
gations but acknowledged that he had "restrained" H to
keep H from hurting himself. Stepmother testified, con-
firming that she had used vinegar to discipline H. Basham,
who had diagnosed H's PTSD and other disorders, testified
that PTSD was "more likely" due to a "history of physical
abuse," which Basham asserted to be typically caused by a
"sequence of events," "almost always *** cumulative over
a result of multiple stressors or traumas," that can include
deprivation of food as punishment. Friedman testified about
H's statements regarding how father and stepmother treated
H, including withholding food from him. Bourg noted issues
in H's forensic interview, including some inconsistencies and
lack of detail, but agreed that H's disclosures were sponta-
neous. Poppleton testified that father had not "quite recog-
nized that there [wa]s a problem" so as to be able to address
it.

Based on the testimonial evidence introduced, the
court concluded that DHS had proved all four allegations
in its petition. In doing that, the court first found that H,
H's therapist, the social worker, Friedman, Basham, and
other witnesses who testified for DHS, as well as Bourg and
Poppleton who testified for father, were credible, and that
father and stepmother were not credible.

On the substantive issue, the court found, among
other things, that H's diagnoses were "clinically consistent"

with H's disclosures of "punishments with regard to use of vinegar, physical abuse, emotional abuse, [and] punishment [in the form of] food deprivation" while living in father's household. It also found that in disciplining H, "[f]ather intentionally engaged" in conduct that result in "a mental injury" to H, and that H's "condition and circumstances [we]re a substantial impairment to his mental or psychological ability to function," which "ha[d] been caused by cruelty to [H]." Relying on *Dept. of Human Services v. L. E. F.*, the court concluded that, despite not rising to the level of physical injury, father's conduct nevertheless constituted physical abuse. 307 Or App 254, 476 P3d 119 (2020), *rev den*, 367 Or 559 (2021).[3] According to the court, the fact that father had "no acknowledgment or insight *** that he ha[d] essentially done anything wrong, nor ha[d] he made any effort to develop the tools necessary to address [H]'s special needs[,]" was an indication that a risk of serious harm to H remained. The court then determined that H was within its jurisdiction.

On appeal, father assigns error to the court's conclusion regarding allegations 3D, 3F, and 3G.[4] He begins by asking us to review his case anew, arguing that such review is appropriate because the juvenile court's decision did not "comport[] *** with uncontroverted evidence in the record." ORAP 5.40(8)(d). He seeks *de novo* review particularly as to the court's factual finding that he and/or members of his household had physically abused or excessively disciplined H. According to father, evidence suggesting that there were issues with H's forensic interview indicated that, among other things, H had not suffered physical abuse.

We begin with father's *de novo* review request and are unpersuaded. *See* ORAP 5.40(8)(c) (limiting *de novo* review to "exceptional cases"); ORS 19.415(3)(b) (granting us "sole discretion" regarding *de novo* review). As DHS argues and the record shows, "the juvenile court made express

---

[3] *L. E. F.* indicated that physical force used to discipline a child can constitute "abuse" where "the discipline results in *** 'any mental injury to a child, which shall include any observable and substantial impairment of the child's mental or psychological ability to function caused by cruelty to the child[.]'" 307 Or App at 260 (citing ORS 419B.005(1)(a)(A), (B)).

[4] Father's appeal does not challenge the court's conclusion concerning allegation 3E.

factual findings, including demeanor-based credibility findings," and its ultimate decision "comports with [those] factual findings"; the court was "aware of the disputed factual issue"—including observations by Bourg, whom the court found credible—"and its importance to the *** disposition of the case"; and the evidence does not "strongly favor[] a different outcome." *Dept. of Human Services v. T. H.*, 313 Or App 560, 562, 496 P3d 704, *rev den*, 368 Or 637 (2021) (declining to review the case *de novo*). We thus decline to review the record anew and review the juvenile court's decision for errors of law to determine whether the evidence, as supplemented and buttressed by permissible derivative inferences and viewed in the light most favorable to the juvenile court's disposition, was legally sufficient to permit that outcome. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013); *see also Dept. of Human Services v. E. M.*, 264 Or App 76, 78, 331 P3d 1054 (2014) (explaining that standard in detail).

We turn to father's assignment of error asserting that the juvenile court erred in establishing jurisdiction over H under ORS 419B.100(1)(c) based on a finding that DHS had proved that there was a current, nonspeculative risk to H regarding physical abuse or harm. According to father, that finding affected the three disputed bases of jurisdiction in this case. He argues that the evidence was insufficient to establish a current, nonspeculative risk of harm by him or any members of his household because there was inconsistent evidence that H had suffered physical abuse and H's behavioral problems persisted and increased after H was removed from father's care. Father further argues that, even if abuse was proved, the evidence was insufficient to establish that such risk was then current and nonspeculative or that father's actions were connected to ongoing harm to H. Father ultimately asks us to reverse the court's judgment as to allegations 3D, 3F, and 3G—concerning abuse and excessive discipline—and to remand for the court to review its judgment.

We again find father's arguments unpersuasive. After reviewing the record for legal error, we are satisfied that the evidence that the court found credible—and the court's explanation for finding it so—was sufficient under

*N. P.* to support the court's decision concerning all three bases of jurisdiction. 257 Or App at 639. That includes evidence that H's diagnosis was "clinically consistent" with H's disclosures regarding being subject to the use of vinegar, physical abuse, emotional pressures, and punishment in the form of food deprivation in father's household. That evidence, as well as evidence of father's lack of action to address H's situation and father's denial of issues involving H, was sufficient to support the court's inference that H had been "exposed to conditions or circumstances that present[ed] a * * * threat of serious loss or injury" to H and which amounted to physical abuse. *L. E. F.*, 307 Or App at 258, 260 (internal quotation marks omitted). In all, the evidence supported the court's conclusion that the totality of the circumstances showed that there was a "reasonable likelihood of harm to [H's] welfare." *State ex rel Juv. Dept. v. T. S.*, 214 Or App 184, 193, 164 P3d 308, *rev den*, 343 Or 363 (2007). Accordingly, there was no error in the juvenile court's judgment of jurisdiction.

Affirmed.